Barron whenever you're ready. May it please the court, Alec Barron on behalf of the plaintiff appellants and with the court's permission I would like to reserve three minutes for rebuttal. Granted. Thank you your honors. As the Supreme Court made clear in Tybill versus Edison, Erisa's duty of prudence requires 401k plan fiduciaries to continually monitor the investments in a plan and remove imprudent ones. This court explained in Suida that the ongoing investment monitoring obligation includes giving appropriate consideration to those facts and circumstances that the fiduciary knows or should know are relevant to the particular investment involved and account for change circumstances. The Quest fiduciaries failed this duty when they retained a series of investments that violated the very evaluative criteria they chose for the plan and attempted to cover up their malfeasance by removing those exact criteria from the policy itself after this lawsuit was filed. The district court erred by reducing Erisa's duty of prudence to a checklist regardless of facts from which a jury clearly could draw an inference of imprudence. This error is made plain by focusing on a few of these factual areas. First the plans investment policy statement or IPS established specific metrics and time horizons pursuant to which the plans investment should be reviewed. Failure of which would render an investment eligible for removal from the plan. The Freedom Funds and Invesco Fund, those are the challenge funds here, failed these metrics for years at a time. Yet the investment committee did not investigate the causes or contemporaneously articulate why retention of those investments was appropriate. All right well let's start. You say these funds underperform but as to what and compared to what it seemed like you were trying to compare these actively managed funds with passively managed funds and of course there's an argument in favor of passive investing but can you really say that the whole approach or strategy are we going to rule that basically funds have to have only passively managed ones because they have lower transaction costs? I mean that would seem to be a market innovation in the case law so those can't be the right comparators can they? We agree with that proposition your honor. Here there are a number of comparisons that are part of the record that we believe support denial of summary judgment first. So you are not, you are dropping the initial comparison with passively managed funds then? We believe that's a relevant comparison but not wholly dispositive in the sense that we're not advocating for a rule that these plans must have passively managed investments because they're cheaper. All right the next problem I have with your case anytime you hear an ad for investments always have the disclaimer past performance is not a guarantee of future performance right? We all know that there's the danger that whenever a stock drops like is the fiduciary going to be sued and that's a hindsight problem because by definition you know you could with hindsight you can show something did worse than something else but you're not you're not suggesting that we can just use hindsight and say there were a few years of underperformance here can you? I mean how could they necessarily be charged with knowing that ex-ante? This is not a hindsight comparison from our perspective your honor. This the investment benchmarking exercise that we undergo here relates specifically to the investment policy that the fiduciaries chose. That policy provided quote in determining whether to place a fund on watch or terminate it. The investment committee will consider all relevant factors including this is a direct quote a fund that underperforms the performance standards set forth in this policy over the most recent three-year period. That's the analytical framework that we use here. The quest fiduciaries in this case chose as their investment policy that this retrospective rolling three-year period was the relevant analytical framework in order to review investments. In addition to that Mercer the plans investment consultant said in real time to the committee as early as 2014 that it believed there were better target date fund offerings than the Fidelity Freedom Funds and this all makes up a mix of information that's not it's not simply looking at hindsight performance and trying to bootstrap a claim that because the investments didn't ultimately perform better in the future there's a breach of fiduciary duty. In this case the information available to the fiduciaries at the time both under their investment policy statement which prescribed a certain analytical framework as well as what didn't prescribe did it I mean it it was permissive it wasn't mandatory it wasn't what it didn't prescribe really anything. Well we agree that there's a degree of permissive language built in but that that framework from our perspective does give rise to a tribal issue of fact as to whether that language that analytical framework is relevant in evaluating the fiduciary's conduct. Of course it's not a quick trigger it's not a prescriptive it's not written in a prescriptive way. I worry that you're not separating out two steps there's the step of whether the process was prudent and then if we even get there whether the funds themselves were objectively prudent and you seem to be focusing just on step two right so first of all do you agree that you have to satisfy both steps? Yes your honor. Okay now let's take let's take step two that you're on now but I do want to get back to step one you're not saying that just because there are arguably better funds or just because Mercer thought that there were better options means that that picking these allowing these options on a menu of options was imprudent are you? Well our contention here is that on the basis of information that was being provided by Mercer that there were better offerings in this space on the basis of failures of frameworks established by the fiduciaries themselves that more investigation is is required that's what this court's decision in unisys says that you can't simply passively take information that might give rise to concerns with the fund and call it call it a day. Here the fiduciaries were should have been absorbing information from their advisor under the framework that they chose for themselves there's also in the record. How do you address the I think the district court hit this and so did your friend the the meeting minutes reflect at least a measure of diligence so what is your response to that? The meeting minutes typically when they involve investment evaluation say something to the effect of the committee evaluated the performance of all funds in the plan it doesn't reflect deliberation over the concerns raised by investment advisor in real time. But isn't that more a dispute about their note-taking practices or the formatting their minutes than you know legal sufficiency of a process or legal sufficiency of the prudence of the investments? From a process perspective we we believe that doesn't extinguish any issue of fact as to whether relative to these specific investments which the information. But it seems like you're saying there was no deliberation and the the minutes support an inference that there was is is there a dispute about the accuracy of the minutes is there is there some evidence in the record that what the minutes say didn't actually happen? Oh we don't believe it's it's appropriate to go from the boilerplate statement all investments in the plan were reviewed to the conclusion that the fiduciaries actually investigated the specific funds. They did more than that though, they met with fidelity. They met with fidelity which was also their record keeper about general issues concerning the plan at the beginning of the class period. There's no evidence in the record that they actually raised questions about the performance issues that were brought to their attention about the negative press both financial and popular press about these funds to actually understand why these concerns existed whether they would be corrected in the future sufficient to give the fiduciaries any justifiable belief that they would they would actually improve their performance. And their investment advisor raised concerns in 2014 mentioning concerns about the quality of underlying funds that's at appendix 7069 in 2016 noting that the underlying funds remain an area of concern as few are rated that's an appendix 3062 in 2020 observing this is an email to a committee member that the inconsistent performance has been an ongoing problem that's appendix 6853. Okay so you know Mercer does not recommend removing the funds and I worry that your test is going to put these funds in a vise which is if you go and make minutes and you dare put down in the minutes concerns about funds there's gonna be a gotcha and this is going to be used to sue them later they can't speak frankly investigating without then going and cutting the funds so they're gonna need to paper the file and say everything is wonderful shouldn't we rather than punish them reward them for going through a process expressing concerns doing some work even if they ultimately decide like look this is not serious enough to terminate I think you're drawing very different inferences from from that than your friends on the other side would but I think the drawing of different inferences kind of highlights the issue it's a summary judgment this is a complaint which the district court found was sufficient to state a claim we've got evidence of these issues being brought to the committee's attention both under the framework they choose from their advisor and third-party sources and we're talking about inferences that might be drawn from all that evidence in order to conclude as a matter of law one way or another that the process was prudent you know I I've been counsel in a number of other cases involved involving the fidelity freedom funds and every single one to go to summary judgment on a similar record has proceeded to trial I worry the best you can say is there are funds that have better prospects are we gonna you know tell us which of these cases have gone ahead and why it is that we should say whenever you can point to some funds with better prospects that it has to go to trial I mean when we look at these that you know the the freedom funds are ranked at the median by the end of 2014 are we gonna say that any fund that's at the median is not good enough to offer that you know it seems like the standard you're you're setting up is really an untenable one for fiduciaries but your honor I I would just submit that this this is not a matter of counsel picking better funds or the plaintiffs in the case picking better funds and then holding up the plans and the investment to those as benchmarks we're talking here about the specific information available to the fiduciaries the benchmarks prescribed under their investment policy statement okay let's talk about what's available to do shares invest go follows a conservative allocation all right is it imprudent to offer investment conservative investment options does the fact that okay they had a lower upside on this fund are you gonna tag them with imprudence cuz you know during the bull market that means you're gonna make less money but in Invesco from our perspective that the performance was only one of several indicia of imprudence Invesco lost half of its assets under management in this period the investment policy statement from the fiduciaries indicated that we using assets under management outflows argument that you're making yes can you just be real precise for me about when you use that term in the briefs what you mean by outflows we mean that other investors are taking their money out of that investment fund the investment policy statement here indicated that reductions in capital under management in the funds in the plan would be a reason for review and potentially removal from the plan so this is over time investors actually exiting those funds all right my concern is that your argument appears to be entirely a step to argument Kate's one of the main cases you rely on Columbia conceded prudent process summary judgment Omnicom the fiduciaries had no process maybe you have an answer now if you don't then sit down and be prepared to come back at rebuttal about why if we take step one seriously you get past step one and what in the case law sure but your honor Omnicom is a good example on point here Mercer the same investment advisor here wasn't the investment advisor to the Omnicom plan Omnicom had a committee staffed by executives with similar backgrounds they also met quarterly in fact the process in Omnicom is remarkably similar to the process here the shortcomings in Omnicom highlighted tribal issues around the process whether the fiduciaries digested the information from Mercer in that case and then actually did the investigation to come up with the justification for retaining those funds it was cogent it was recorded at the time that they could articulate here we have a similar factual matrix regarding the committee structure we have the same investment advisor and here we have the additional facts of actually removing those same criteria that they chose for themselves from the IPS after the lawsuit was filed to basically strip their own investment policy of any evaluative framework the same criteria that were violated during the class period are no longer in the investment policy statement that that's a permissive IPS the committee did more it met with fidelity it didn't meet fidelity just about record-keeping it met with fidelity to discuss the glide path it commissioned Mercer to I think this case is distinguishable from those cases I think this looking at the rubric set up by Unisys for instance the Third Circuit's case concerning an investment monitoring process in whether a process that's on the the bare-bones side is sufficient for prudence as a matter of law in that case there was also meetings on a quarterly basis meeting minutes in advisor the Third Circuit has said in the past that that is not enough in this case those meetings with fidelity did not result in any analysis and any record here about why the fiduciaries had a justification to retain these plans that's from our perspective we would submit not why they met with fidelity to talk about these issues that were brought to their attention that they would have known about if they had taken a look but isn't it it's in this summary judgment motion isn't it your burden to establish the process was deficient I think it's our burden to establish that is as a matter of their tribal issues about that and so it's there if the record that we have is that these meetings took place and there is at least some inference available that they reflect diligence isn't an incumbent on you to come up with evidence suggesting that supporting a different inference if it's your it's your element we agree with that and we think that's present here from the well you know I brought up the minutes and you're bringing up the fidelity meetings what what's in the record for us to draw an inference that something other than what it looks like happened at those meetings we have every two years or so during the class period very specific concerns being brought to the committee's attention regarding the fidelity freedom funds we have failures of the evaluative criteria for both the fidelity funds and the investigative funds we have the capital flight in the case of fidelity in our our fiduciary process expert raised this and by the way the expert evidence here was was unchallenged so there is a process expert that identified deficiencies with the process documentation governance and implementation that was admissible at summary judgment and we think not meaningfully dealt with in the decision all of which support an inference and could support a conclusion by a fact finder that there were issues with the process here that those concerns were not assuaged in real time and that there wasn't a justification to retain these funds and we think that's the process inquiry here not just ticking the boxes of a process framework that for multi-billion dollar plans is very common all right thank you we'll get good morning your honors Melissa Hill for the quest diagnostics a police may please the court I think what we've heard from appellants this morning is that this case essentially hinges on their claim that because the challenged funds underperformed for a short period of time over short-term performance metrics and because at some point there may have been better options in the market the fiduciaries both violated their duty of prudence to engage in a prudent process and also the funds were not objectively prudent to make to to second prong of the of Arissa's prudence analysis I'd submit that this issue was recently addressed by a panel of this court in the Cho versus prudential case just earlier this month where the where the Cho court evaluated essentially many of the same facts that we have present here so engaging a consultant to evaluate the investments meeting on a quarterly basis receiving annual fiduciary training employing a watch list meeting with fund managers and and evaluating doing the additional investigation and the Cho court the panel described those factor those different facts as the hallmarks of a fiduciary process hallmarks of a prudent process that's what plaintiffs today are calling a checklist an inappropriate checklist but what a panel of this circuit has called the hallmarks of a prudent process and I would submit your honor that your honors that the quest diagnostics fiduciaries did more than just satisfy those hallmarks of the fiduciary process they gate they engaged in the addition the additional investigation that we heard from plaintiffs today would be necessary to satisfy that process they as I think judge Beavis pointed out in in questioning my my colleague they they met with fidelity not just as its record keeper they met with fidelity and the district court judge Neils lays that out in detail and cites to the the facts in record and the reports that were generated in advance of and discussed during each of those meetings with fidelity they met with fidelity to talk about their management strategy they met with fidelity to talk about the glide path analysis which is exactly that the asset allocation strategy to understand what their glide path analysis was they met with fidelity and asked asked Mercer to discuss how the the actively managed freedom funds were performing against alternative options both actively managed and passively managed they at some point conducted a targeted search of potential alternatives to see whether they wanted to switch from active management to passive management and concluded they that it was not appropriate and as the not appropriate for the plan at that time and that throughout the class period continued to in the words of the district court scrutinize the freedom funds at some Fidelity recommended for placing those funds on watch at the height of the COVID pandemic when the market was was fluctuating and that's what the committee did and they continued to scrutinize the funds throughout that period similarly with the investment with the Invesco fund which is an actively managed fund that is a conservative strategy meant to expected to underperform in a bull market and that's precisely what it did and Mercer continued to rate it as an A rating nonetheless the committee continued to meet with Mercer let's talk about some other steps so Unisys fiduciaries are supposed to review the data from the consultant excessive significance supplement it were needed but did the committee actually do that between 2013 and 2015 your honor I would submit absolutely and their 2013 is before the class period but there are at there are quarterly reports through for every quarter of the class period showing that the the the committee was meeting with Mercer and was evaluating all of these performance metrics the evaluative criteria criteria that plaintiff's counsel was discussing those are all reported on by Mercer and the reports even from that very beginning period of the class period were were robust and and that additional scrutiny scrutiny that was warranted that that kicked off as the class period progressed was just above and beyond those those discussions and meetings that were occurring already and and and and certainly I would I would submit that that the evidence suggests that across the class period the the fiduciaries were engaged in the process in a way that is I think not evident in the Unisys decision so your honor mentions Unisys that denied summary judgment found an issue of fact as to whether or not there was a prudent process and whether the fiduciaries there engaged in a prudent process to evaluate the guaranteed investment contracts that were alleged to be the imprudent investment in that case and and what the Third Circuit there looks to is all of the record testimony conflicting record testimony between the fiduciaries the consultants and the experts all saying kind of different things about what was reviewed who was looking at what the one of the principal fiduciaries charged with evaluating the propriety of the the guaranteed investment contract said I think in this deposition what I believe is quoted in the in the Third Circuit's opinion I don't remember if I was involved with that I don't know exactly what I looked at I don't know what metrics I looked at and so those were some of the distinguishing factors that made that process in Unisys in Unisys raise a material issue of fact as to whether there was a prudent process. I'd like to stick with Unisys but talk about the expert reasoning there there's a back-and-forth in the briefs about the expert jurisdical and the process opinions. So Unisys is talking about an expert Gothheimer I'll say quoting based on his interpretation of the deposition testimony and exhibits he reviewed is itself some evidence of Unisys imprudence capable of defeating Unisys motion for summary judgment and that language as I read that opinion you know it lands pretty hard in this case and I want to give you a chance to address it and why it's not controlling here. Sure absolutely and thank your honor for the question I I think one of the primary differences between the Unisys expert opinions that were at issue and what we have here is the question of whether the expert opinions were supported by the record of undisputed facts undisputed facts that are before the district court and they they again outline these hallmarks of the prudent process they say the fiduciaries did this this and this and then the plaintiff's expert Driscoll comes in and says a prudent fiduciary would have done something different would have removed the funds sooner she also makes some observations that the district court then finds are just unsupported factually by the record so for example that the committee or the fiduciaries didn't discuss this but wouldn't it be your job to draw that out on cross at a trial of this expert your honor I it's not an opinion that needs to the court doesn't need to determine whether to credit the opinion it's not it if if the opinion is not supported by fact the rule 56 would say that the the court the district court is not required it did rule 56 actually requires the evaluation of whether evidence is sufficient and whether one of those evaluated steps is to say are are the what are the facts say and if there is expert testimony the the the court is not required to credit it at a rule 56 stage if it's not supported by the factual record well so here a lot of the experts report relied on the failure to follow the IPS which I get it it's not mandatory but why wouldn't that be material fact for a jury to weigh failure to follow the the committee's own investment policy statement and then second question can you address the the changes made to the IPS after the litigation sure absolutely your honor so as to the first question as to whether it's a question of fact for the fact finder to weigh to determine whether the IPS was violated the IPS is a written document and it's well within the district court's purview to evaluate what it says and what it requires there's no argument from the plaintiffs here that it was ambiguous there's no argument that there's competing interpretations among the committee members or that the committee members didn't understand what it meant and they're just they're saying they just didn't follow it not that it's ambiguous but it's clear and you didn't follow it right and I think that that makes it very very easily within the court's purview to say just like reading a contract it's a written document it either requires these steps or it doesn't require the steps and I think judge Neal's appropriately concluded that I'm not talking about whether it's required let's say it let's stipulate they're not required they're just advisory and the committee didn't follow the policy that policy advice why isn't that a matter for the jury to to to weigh I I think the question of whether a fiduciary engaged in a prudent process is a question of law that judge Neal's appropriately reached based on undisputed an undisputed factual record the factual record says the fiduciaries took all these different steps that are laid out in detail similar to the steps that were taken by Prudential and in the case by Evonik in the Silva case by Braun in the Nunez case and and to say based on all those undisputed facts I conclude as a matter of law that the fiduciaries engaged in a prudent process and the question of whether the IPS should have guided a fiduciary to a different conclusion I would submit two things one doesn't raise an issue of material fact that would survive summary judgment but second then is is it is not the law again not a question of fact for the fact finder but it's not the law to say that because there is another preferable approach the approach that the fiduciaries took was a breach and they're there and in fact the Supreme Court has recognized in the Hughes versus Northwestern case that they're that the courts must give consideration to the range of reasonable judgments that a fiduciary make and recognizing the difficult trade-offs that a fiduciary has to have to make when engaging in that decision-making so just because the IPS might have advised them that there was another permissible also prudent course and perhaps Miss Driscoll thinks that that would be her preference there is no evidence in the record that that's what all fiduciaries would have done or that's what a reasonable fiduciary would have done she just thinks that that's the preferred course based on her reading of the IPS the argument would be this is what the committee itself says is its preferred course but it deviated from that course well I think to get to that point you have to the court has to first look at what the what the IPS says and conclude that it does actually say that it should do that and I would submit that judge Neils was correct to find that it doesn't require that either the earlier version or the later version the the redline version of the IPS that the plaintiffs are making a lot about is isn't it certainly in the appellate record and and reviewable I would I would point the the court to the one redline change that they're focused on at appendix 5808 where you know there's a it's a 15 page document of all sorts of guidance and criteria that mentions in several places the the language that the district court relied on in terms of looking at a whole host of factors evaluating it over a long period of time allowing a fund to be evaluated over a full market cycle all of those things the district court I think appropriately found did not amount to a requirement that the funds be removed after short periods of performance on a three-year look-back period the language that they're focused on says it's just a clause in a sentence where it says performance should be evaluated over at least a three-year period to provide fund management sufficient time to execute its strategy over a full market cycle which means you have to leave the the investment in the plan for three years not that you just look back on a three-year performance period and then it says depending on market conditions the committee may decide that a longer period is warranted and the language that was removed that the plaintiffs would read as so telling of some nefarious intent is just that however a three-year period is generally sufficient for evaluating performance that's what came out and and you can even see in the record the the redline comments between the committee and the investment advisor that says is this necessary is this duplicative and elsewhere in the in the document it reiterates that that guidance to review about investments over a long period of time so we would submit the the argument as to the IP the changes to the IPS in 2021 is simply a red herring and I would I would just note to the extent and unless the the court has further questions that there are independent grounds on which the court can affirm including the objective prudence of the of the investments which I know we've heard a lot about short-term performance today and what that means as to the prudence of the process I agree with Judge Beebe said I think at some points in plaintiffs presentation it seems to complaint the process with the objective objective prudence argument but common spirit is very clear on this point the Sixth Circuit case Smith versus common spirit Mr. Barron mentioned that he that all of the Freedom Fund cases he's involved in have gone to trial I may have misheard that but to the extent that's what he mentioned the the Smith versus common spirit case was another Freedom Fund case brought by Mr. Barron's firm and the Sixth Circuit found on a motion to dismiss that the allegations plaintiffs were making there again only at the at the at the pleading stage were insufficient to state a claim of imprudence as to the Freedom Funds looked at exactly the things plaintiffs are raising here including the short-term performance including the outflows and and the changes in investment excuse me investor strategy that the plaintiffs are pointing to here as both suggesting an imprudent process and suggesting objective imprudence the Sixth Circuit found as a matter of law before discovery even happened that this was insufficient to state a claim as to these Freedom Funds so I would submit that to the extent there is there's focus on the short-term performance as being evident of an objectively imprudent investment or an imprudent process the Sixth Circuit has addressed that and in an instructive way thank you thank you mr. Barron I believe you reserved three minutes for thank you your honors and I'll try to be brief recognizing I went a little bit over time and my opening segment but just taking my friends arguments in turn first on the Cho versus prudential case I think it's important to highlight first it's a non-precedential opinion there were no there was no evidence reviewed regarding IPS failures as is the case here and very notably that decision did not review any expert evidence going to an imprudent process or specific process deficiencies also at issue here we address that or in a to note I also just want to clear up there was some suggestion I think in my friend's argument that pre-class period evidence the 2013 and some of the 2014 evidence can't be considered the the statute of limitations in ERISA is six years and so that's the recovery period here but that is not the period a limiting period for purposes of considering evidence and in this court and made her versus Wesco last year I believe decided that issue in our favor that you can consider evidence from pre-class period conduct in assessing prudence in the context of an ERISA statute of limitations there's some suggestion that the district court could simply set aside our expert evidence on the basis that none of it was material and what I heard from my friends argument is that's because the expert evidence was not supported by the factual record that's the stuff of a dapper challenge your honors that was not made here this this is admissible evidence in its opinion that specific process deficiencies existed here which presented prevented the fiduciaries from identifying issues with these investments and if not made by way of a dapper challenge I think is judge Bob noted that that's certainly fair for cross-examination at trial but but it's not a worry that that sets up a rule I'm not referring to your expert or your case but the kind of argument you're making right now leads to a situation where if you have enough money to pay for an expert who's willing to say what you need said and be untethered from the record that that's a that's a trial case and I'm not you know I I think this is a close issue in terms of what Unisys says and how it applies to this case but there's problems on both sides there and I'm not sure if you have a limiting principle on this well I think there are procedural mechanisms directed at that I think the rules of evidence and Daubert would prevent expert evidence that's completely untethered from a record but if we're talking rules of evidence and we're talking Daubert we're usually getting pretty close to talking trials not always but that what I'm talking about is at the rule 56 stage are there limiting principles on the concept of somebody can't a plaintiff comes up with an expert to say what to support the plaintiff in a way that's not connected to the record I'm not sure that rule 56 prevents the district court from screening that out if that's all there is sure I guess our submission on that point would simply be that a challenge could be brought in connection with a summary judgment motion if expert evidence was untethered such that here we don't think it's a fair answer to simply set it aside now miss Hill cited Cho that was a non-presidential opinion true but we affirmed the summary judgment there there was an expert the report was inconsistent with the record this quarter 10 said it was so an expert doesn't automatically get you past summary judgment I mean granted it's not precedent but there seems to be sense that you can't just hire a record expert and automatically get to summary judgment so what specifically does the expert need to say and how much does there need to be in the record to support the expert but I think this goes back to the theory of the case and show the theory was not premised on violations of an IPS or investment standards that the fiduciaries chose for themselves and in show the facts included that the fiduciaries met on a bi-weekly basis with the investment advisor that there was an in-house benefits team that dealt with these issues all the time and so I think the factual record in Joe is distinguishable but I also think the nature of the and you know we would note that it's fairly well established that once a fiduciary adopts an investment policy statement failure to comply with it actually gives rise to potential breach under ERISA that's the California iron workers and grace capital cases and multiple courts have recognized that a genuine dispute as to whether defendants complied with an IPS precludes summary judgment that's would you say the theory of this case is the failure to follow the IPS I think that's a central theory of this case you're on can I kind of committee ever deviate from its IPS and avoid summary and avoid a jury trial I think if they're in our expert goes into this I think if there's a documented reason if there's analysis done and there's recognition that despite IPS violations there is a justification for retaining a fund and I do want to point out here my my friend noted one page of the IPS that was altered in 2021 but did not point out three other pages it contained critical evaluative criteria relevant to this case a lot of site those sure that's a appendix 5805 to 5806 all of the evaluative criteria metrics and time horizons were deleted from the IPS and then appendix 5809 contains the actual removal framework that we cite here specifically in determining whether to place the fund on watch or terminate the Investment Committee will consider all relevant factors including a fund that on a fund that underperforms the performance standards set forth in this policy over the most recent three-year period and others I just wanted to note for the record that those were also removed and and my friend on the other side didn't touch on those and then if I made just the last point on these other basis bases for affirmance we also have expert testimony on those on those areas and we would submit that since the district court didn't adjudicate any of the Daubert motions didn't evaluate any of the evidence on those areas we think that would be for the district court to decide in the first instance we think the record does also support reversal on those bases or would support denial of summary judgment on those bases but you know we think that the evidence especially expert evidence should be by the district court in the first instance and then finally on common spirit I didn't mean to suggest that every Freedom Funds case ever ever filed went to trial those that were adjudicated on summary judgment all went to trial and common spirit was the one outlier out of ten Freedom Funds cases that I'm aware of that was dismissed all of the others proceeded past the motion to dismiss right so if since you're making these representations we don't have them we don't have the names of them but you know the juries reject all these what one has been actually tried to a decision and the decision was in the defendant's favor in that case based on the litany of evidence presented at trial testimony experts and the like right so basically you get past summary judgment and then you get a settlement that's what you're saying in several of the cases and in one that was tried the plaintiffs didn't prevail okay well we thank both parties for their excellent briefing and argument we'll take the order under advisement we asked parties to cooperate in preparing a transcript and to split the cost of it we'll go off the record briefly we'd like to thank both counsel for coming today and we'll greet you over at sidebar